FILED

2005 Jun-30  PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

DIANA LITTLE and
GYPSY STOVALL,

     Plaintiffs,

vs.                      CASE NO. CV-03-J-2870-J

WALKER COUNTY BOARD OF
EDUCATION,

     Defendant.

## <u>MEMORANDUM OPINION</u>

Pending before the court is the defendant's motion for summary judgment (doc. 16), brief in support of said motion and evidentiary submissions (docs. 17 and 18), to which the plaintiffs filed an opposition and evidence (docs. 22 and 23).  The defendant thereafter filed a reply (doc. 27).

The defendant also filed a motion to substitute Exhibit I of evidentiary material regarding brief in support of motion for summary judgment (doc. 20).  The court having considered said motion and being of the opinion said motion is due to be granted;

It is therefore **ORDERED** by the court that the defendant's motion to substitute (doc. 20) be and hereby is **GRANTED.**

Having considered the motions, evidence and arguments submitted by the parties in support of and in opposition to the pending motion for summary judgment, the court finds as follows:

## I. FACTUAL BACKGROUND

Plaintiffs commenced this action on October 22, 2003, by filing a complaint alleging the defendant discriminated against them and retaliated against them, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*  Plaintiff Little alleges that the defendant discriminated against her based on her gender by failing to promote her to a supervisory position in the transportation department.  Complaint, ¶ 15.  The position in question was filled by a male whom the plaintiff asserts was less qualified.  *Id,* ¶ 25.  Plaintiff Little further claims she was not promoted to the position of Assistant Principal for Curry Elementary School based on her gender.  *Id.*, ¶¶ 33-34.

Plaintiff Stovall also claims that the defendant discriminated against her based on her gender by failing to promote her to a supervisory position in the transportation department.  Complaint, ¶ 15.  Plaintiff Stovall further claims that the defendant discriminated and retaliated against her by failing to promote her to several different positions within the Walker County School System.  *Id.*, ¶¶ 41, 46, 54, 61.

2

Both plaintiffs also assert that the defendant violated their rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., by filling various of the above positions with individuals younger than the plaintiffs and under the age of 40.  Lastly, the plaintiffs claim that the defendant has retaliated against them, in violation of Title VII, because they have "continuously spoken out against the Board's discriminatory practices of not hiring females for administrative positions."  Complaint, ¶ 68.

In the light most favorable to the plaintiffs, the facts of this case are as follows:

**Plaintiff Stovall:**

Plaintiff Stovall holds numerous degrees in education.  Stovall depo. at 8-10. She claims she has been passed over for promotions several times and the positions in question given to less qualified and younger males.  *Id*., at 22, 24-25.

Plaintiff Stovall began working for defendant Walker County Board of Education in 1975 as a junior high school teacher.  Stovall depo. at 25.  Aside from taking several years off to have children, she worked as a teacher until 1993 when she became a counselor.  *Id*., at 27.  She then became assistant principal and counselor at Carbon Hill in 2000.  *Id*., at 28.  In 2003, she became Principal of Bankhead Middle School.  *Id*., at 29.

Stovall filed her EEOC charge underlying this litigation in 1998.  Stovall depo. at 30-31, 141; Defendant exhibit D.  The original charge was based on sex discrimination for being promoted to a transportation supervisor position and/or an assistant principal position.  Stovall depo. at 141; exhibit 6 to Stovall depo.  She later amended the EEOC charge to include further complaints of sex discrimination in not being selected for other positions and also to complain of age discrimination.  Stovall depo. at 149; defendant exhibit G.  She filed three grievances in 1997, two in 1998 and two more in 1999.  *Id.*, at 32, 97.  She later dropped her 1997 grievances, due to intimidation which took the form of "a general air of discontent."  *Id.*, at 40-43.  This was being done by "[t]hose that were not happy with that action."  *Id.* at 43.

She filed two grievances in 1998 concerning the Carbon Hill High School assistant principal position for the 1997-1998 school year and the 1998-1999 school year.  Stovall depo. at 53, 57.  Concerning the 1998-1999 school year grievance, Stovall alleges that the individual selected, Lee Van Fleet, was hired outside the system and had a criminal record, so she felt she had been discriminated against based on her sex.[1]  *Id.*, at 56-60.  She does not know what his qualifications were, but states she was more qualified because she had tenure with the system.  *Id.* at 62-64, 68-73.

---

[1] After the Walker County Board of Education hired Mr. Van Fleet, he was arrested and then terminated.  Stovall depo. at 64-68, 79-81.  At the time he was hired, he did not have a criminal record.  Sanford depo. at 43-44.

4

According to Harvey Sanford, the current superintendent of the defendant school system, Van Fleet had been an assistant principal at Walker High School for a number of years and had also been a principal in another county. Sanford depo. at 50, 53; defendant exhibit I. He did not have any time in the Walker County System, however. *Id.*, at 54.

Stovall filed the other 1998 grievance based on not being selected for the maintenance supervisor position. Stovall depo. at 84. She alleges she was qualified for the position, although she did not have a CDL, which was a requirement. *Id.*, at 84-85. She alleges that she had a Master's degree in leadership, which she states is a requirement, and Mickey Barrentine, who was hired for the job, did not. *Id.*, at 85-86, 90-93. Interview records show that Barrentine held the same degree as plaintiff Stovall, but had nine more years in the defendant system. Defendant exhibit H. Stovall states she was qualified because she could change the oil in her car and had done routine maintenance at schools in the past. Stovall depo. at 93-94. However, she had never driven a bus nor maintained commercial vehicles. *Id.* at 94.

Stovall filed additional grievances in 1999, concerning positions Dora High School assistant principal and Oakman High School assistant principal.[2] Stovall depo.

---

[2]Stovall has actually applied for thirty-seven positions with defendant since 1997. Exhibit 9 to Stovall depo. Women (including plaintiff) received 16 of the positions in question. *Id.*

at 48. These became the subject of her amended EEOC charge, filed in January, 2000. Exhibit 7 to Stovall depo.; Stovall depo. at 50. Concerning the Oakman High School position, a man named Ray Davis, who had been a counseler at Oakman High and had a Master's certification, was hired. Stovall depo. at 101. Stovall never taught at Oakman. *Id.*, at 101. Although she does not know how long he had been at Oakman, or what his work experience was, Stovall states her qualifications, years of experience and educational background were greater. *Id.*, at 102-105.

Stovall states that she also did not get the position at Dora High School due to gender discrimination. Stovall depo. at 105-106. She states she was more qualified and had more experience, then Dennis Willingham, the male who was hired. *Id.*, at 106-107. She further alleges that he had been given an assistant principal position although he lacked certification. *Id.* Although he had administrative experience and she did not, Stovall asserts that is because she had been denied the opportunity to gain administrative experience. *Id.* at 108-109.

Stovall also complains she should have gotten the position at Cordova High School in 2001, but Jason Adkins was hired instead of her, despite her greater qualifications.[3] Stovall depo. at 114-115, 118. She does admit that he met the minimum qualifications for the position. *Id.*, at 116. He had previously been assistant

---

[3]Stovall also filed an EEOC charge on her non-selection for this position, but states it was dropped because of a time limit. Stovall depo. at 136-138; exhibits 4 and 5 to plaintiff depo.

principal at Parrish High School for seven years, but Stovall claims this prior experience was illegally obtained because Atkins was not certified at the time. *Id.*, at 115-117; Sanford depo. at 56. Atkins had an AA certificate, the same as plaintiff Stovall. Exhibits 2 and 3 to Sanford depo. According to Sanford, many people in the community wanted Adkins for principal at Cordova and he had gone to school there. Sanford depo. at 59, 63-64.

Stovall explains that she has been the victim of retaliation because after she filed grievances, she was ignored for jobs where she was more qualified that the males that were hired.[4] Stovall depo. at 133. Stovall states that the "only lawsuits I have ever filed against the Walker County Board of Education was when they discriminated against me based on my sex, or that they have given someone a job, you know. That I always felt that it was based on my sex, that's it." Stovall depo. at 139.

Upon her promotion to assistant principal at Carbon Hill, Stovall state she was treated well. Stovall depo. at 155, 174-175. She has also enjoyed being principal at Bankhead Middle School. *Id.* at 171. After this promotion, she applied for but did not receive the position of principal at Oakman High School, which she claims was due to discrimination. *Id.*, at 165, 173, 175-176. Dr. Sanford told her that the man

---

[4]Stovall also states that "Pat Smith and Linda Draper did end up settling and did receive some sum of money because of what – how wronged that they has been. I can tell you that. So those two – I don't know those other people, but two of those names, those people, did settle out of court for the exact same thing that I'm sitting here before you for." Stovall depo. at 134-135.

who got the Oakman principal job was well liked in the community.  *Id*., at 188.
Stovall pointed out to Sanford that she was better qualified and that the person chosen
was half her age.  *Id*., at 189.  He replied that there was more to hiring someone than
certification and experience.  *Id*.  Stovall has not filed a grievance over this position.
*Id*. at 187.

**Plaintiff Little:**

Plaintiff Little holds numerous degrees and certifications in education,
including a Doctorate in educational leadership.  Little depo. at 13-14.  She began as
a sixth grade teacher at Carbon Hill Elementary Junior High in 1976 and remained in
that position until 1998.  *Id*., at 18-19.  During 1998, she also substituted for the
principal, David Beason, when both he and the assistant principal, Peggy Mathias,
were absent.  *Id*., at 19-20.  She then became assistant principal at Curry Elementary
Middle School, and the following year returned to Carbon Hill as half assistant
principal and half classroom teacher.  *Id*., at 20, 124.  *See also* exhibits 15-17 to Little
depo.  She then became principal of Carbon Hill Elementary Junior High in 2001.
Little depo. at 20-21, 125.

Plaintiff Little filed two grievances in 1997 based on her non-selection for the
positions of dropout supervisor and assistant principal at Oakman High School.  Little
depo. at 22-23.  An additional 1997 grievance was filed by Little concerning a Lupton

assistant principal position.  *Id.*, at 40, 126.  This position was filled by Brenda McAdams.  *Id.* at 41.  She withdrew her grievances because the wife of Tim O'Neil, who was selected for the dropout supervisor position, called Little's father, who lived next to O'Neil's wife's parents, and criticized him for Little filing a grievance over the position O'Neil had gotten.  *Id.*, at 25-26; exhibit 18 to Little depo.

Little filed several more grievances in 1998 including two for her non-selection as assistant principal position at Carbon Hill High School.  Little depo. at 27-28.  *See also* exhibit 13 to Little depo.  This position was filled by Pat Smith, a female, who Little agrees was more qualified than she was.  Little depo. at 30, 35, 39.  She also filed a 1998 grievance concerning a position as assistant principal at Curry Middle School and another 1998 grievance over the maintenance/transportation supervisor position.  *Id.*, at 39-40.  She alleges that the position was posted as requiring a CDL to keep her from getting the job.[5]  *Id.*, at 43-46.  However, she admits that the state requires a person to have a CDL to hold that position.  *Id.*, at 46-48.  She admits she had never driven a bus and did not have the experience the person selected, Mickey

---

[5]The job description reads as follows:
Central Office-
> Maintenance/Transportation Supervisor/certified or currently pursuing certification in Administration and Supervision; shall be trained in school bus driving techniques by the State Department of Education and hold a valid Alabama School Bus driver's certification and a valid Commercial Driver's license with proper endorsements issued by the Department of Public Safety.

Exhibit 3 to Little depo.

Barrentine, had.  *Id.*, at 91.  Interview records show that Barrentine held the same degree as plaintiff Little, but had 4 more years in the defendant system.  Defendant exhibit H.

As to the Curry position, Little asserts she was discriminated against because a much younger, uncertified male, Dennis Willingham, was hired for that job.[6]  Little depo. at 50-51, 81-82.  She filed a grievance based on sex and age discrimination and, as a result, was instated in the position of assistant principal at Curry Elementary Middle School.  *Id.*, at 51-55, 176-177; exhibit 13 to Little depo.  She was paid back pay for the position, but returned the check on advice of counsel and because she wanted to go through litigation based on her EEOC charge instead.[7]  Little depo. at 56-57, 63, 65; exhibits 5, 6, 8 and 10 to Little depo.  She claims that not having the back pay was retaliatory because she did not have the money because she returned it.  Little depo. at 66.  She also complains that the Curry Middle School principal, Linda Woodley, did not know she had been placed in the position in question, and she was given space in an area where the bookkeeper and Willingham were located.  Little

---

[6]Sanford stated he believed Willingham was still working on his school administration certificate at the time.  Sanford depo. at 13.  Sanford was assistant superintendent at the time in question and had no authority over who was hired for assistant principals.  *Id.*, at 20, 58.  That determination was left up to the school principals.  *Id.*, at 18-20.

[7]Little explains that she was not happy with being instated in the position because the defendant should have negotiated with her attorney, but she could not state anything she thought she was due that she did not receive.  Little depo. at 112-113, 116-117.

depo. at 59; Little affidavit, ¶ 7.  The following day, Willingham was moved to the principal's office and Little continued to share space with the bookkeeper.  Little depo. at 59, 86.  The principal, Brad Tidwell, left midway through the year and Willingham took over until he was replaced by Pat Lovelady.  *Id*., at 59-61, 179-180; Little affidavit, ¶ 9.  She states that the assistant principal position at Curry is part of her lawsuit because she was discriminated against based on her sex and her age in the way the position was filed in the first place and the unfair treatment she got at Curry.  Little depo. at 85; Little affidavit, ¶ 10.  Plaintiff Little filed the EEOC charge at issue in this case in September, 1998 claiming she had been discriminated against based on her sex and her age.  Defendant exhibit A.

In 1999, Little filed a grievance over not being selected to be principal at Curry Elementary.  Little depo.  at 40; exhibit 12 to Little depo.  She states this was due to retaliation because she had been assistant principal.  Little depo. at 93, 95.  That position was filled by Pat Lovelady, a female, who had only been at the school one semester.[8]  *Id*., at 93; exhibit 1 to Sanford depo.  She also claims that people have not been nice to her because of her lawsuit.  Little depo. at 139-141.  Specifically, she

---

[8]Interview results from applicants for the Curry Elementary position show that both plaintiffs applied for the job.  Exhibit 1 to Sanford depo.  Lovelady's resume reveals that she graduated from the University of Montevallo in 1965, from which the court deduces that she could not be less than 40 years old during the time in question.  Defendant exhibit K.

states Alan Trotter and Mickey Barrentine have been disrespectful to her by ignoring her. *Id*., at 142-143.

## II.  STANDARD FOR EVALUATING SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,*  477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of  the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific

facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, Fed.R.Civ.Pro. 56(e).  In meeting this burden the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment.  *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

### III. DISCUSSION

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000).  With these standards in mind, the court considers the plaintiffs' claims.

Both plaintiffs assert that they did not receive various promotions due to gender discrimination, age discrimination and retaliation for prior grievances and their EEOC charges.  Neither plaintiff has offered direct proof of such discrimination. When evidence of discrimination is circumstantial in nature, the Supreme Court has

fashioned a three prong test for focusing the court's examination of the evidence and allegations. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252-253, 101 S.Ct. 1089, 1093-1094 (1981); *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir.1991). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir. 1997). Meeting this burden creates a presumption of discrimination. *Combs*, 106 F.3d at 1528.

The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Hall v. Alabama Ass'n of School Boards,* 326 F.3d 1157, 1166 (11th Cir.2003). The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir.1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its actions, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101

S.Ct. at 1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The employee may satisfy this burden by persuading the court that the proffered reason for the employment decision is not worthy of belief.  *Hall*, 326 F.3d at 1166.

## The Gender Discrimination Claims

In a "failure to promote case," the plaintiff meets her prima facie burden of proof by establishing that (1) she is a member of a protected class; (2) she was qualified for the position for which she applied; (3) she was rejected for the position; and (4) the position was filled with a person from outside the plaintiff's protected class.  *Vessels v. Atlanta Independent School System,* 408 F.3d 763, 768 11th Cir.2005); citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**Supervisor of Maintenance/Transportation**

Neither plaintiff has established a prima facie case of gender discrimination in their non-selection for the Supervisor of Maintenance/Transportation position because neither can show she qualified for the position.  To demonstrate qualification for a position, the plaintiff "need only show that he or she satisfies an employer's objective

qualifications." *Vessels,* 408 F.3d at 769.  Both plaintiffs fail to satisfy this burden.

While both plaintiffs argue they could have received the necessary certifications, this

is insufficient to establish either was qualified at the time she applied.  These claims

against the defendant are due to be dismissed.

**Plaintiff Little:**

*The Curry Elementary assistant principal position:*

Plaintiff Little argues that although she was placed in this position, this claim

is not moot because the defendant "blatantly discriminated against the plaintiff in

denying the plaintiff this position."  Plaintiffs' memorandum at 22.  However, the

evidence is undisputed that, after filing a grievance over her non-selection, the

plaintiff was placed in this position and given back pay.  The fact that the plaintiff did

not accept the check from defendant does not change the viability of this claim.  Given

that Plaintiff Little was given the job in question, the title in question, and a check for

backpay, the court finds any past discrimination concerning this position has been

remedied.

> The "primary objective" of Title VII is to bring employment
> discrimination to an end, *Albemarle Paper*, 422 U.S., at 417, 95 S.Ct., at
> 2371, by "'achiev[ing] equality of employment opportunities and
> remov[ing] barriers that have operated in the past to favor an identifiable
> group ... over other employees.'" *Ibid.* (quoting *Griggs v. Duke Power
> Co.*, 401 U.S. 424, 429-430, 91 S.Ct. 849, 852-853, 28 L.Ed.2d 158
> (1971)).  See also *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,
> 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973).  "[T]he preferred

means for achieving" this goal is through "[c]ooperation and voluntary compliance." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974).

To accomplish this objective, the legal rules fashioned to implement Title VII should be designed, consistent with other Title VII policies, to encourage Title VII defendants promptly to make curative, unconditional job offers to Title VII claimants, thereby bringing defendants into "voluntary compliance" and ending discrimination far more quickly than could litigation proceeding at its often ponderous pace.

*Ford Motor Co. v. E. E. O. C.*, 458 U.S. 219, 228, 102 S.Ct. 3057, 3063 - 3064 (U.S.1982).

As any discrimination which arguably existed in plaintiff Little's non-selection for the position has been remedied, the court finds this claim to be moot.

**Plaintiff Stovall**

*Carbon Hill High School Principal Position:*

For purposes of this opinion, the court assumes that plaintiff Stovall has satisfied her prima facie case for showing gender discriminate in the failure to promote her to this job.  The defendant's burden to articulate a non-discriminatory reason for failing to promote an employee is a burden of production, which has been characterized as "exceedingly light." *Vessels,* 408 F.3d at 770 (citations omitted). The defendant offers as a legitimate, non-discriminatory reason for its decision to hire Van Fleet rather than plaintiff Stovall that Van Fleet had prior administrative experience as a principal and assistant principal, and Stovall did not.  *See* affidavit of

Trotter[9], ¶ 8.  This is clearly a reason that "might motivate a reasonable employer." *See e.g., Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir.2001).

Because defendant met its burden to produce a non-discriminatory reason for its actions, the presumption of discrimination is eliminated and the employee must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not the true motivations, but a pretext for discrimination.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).  This evidence must reveal such weaknesses or implausibilities in the employers' proffered reasons that a reasonable factfinder could find them unworthy of credence.  *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir.2004); *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir.2001); *citing Combs*, 106 F.3d at 1538. The plaintiff fails to offer any evidence that offered reason was a pretext for discrimination.  Therefore, this claim is due to be dismissed.

*Dora High School Assistant Principal*
*Oakman High School Assistant Principal*

Plaintiff Stovall learned she did not receive either of these positions on or about July 1, 1999.  Assuming that her amended EEOC charge concerning these positions

---

[9]Alan Trotter was Superintendent of the Walker County School System from July, 1998 until December, 2002.  Trotter affidavit, ¶ 4.

was timely filed, and assuming that she could satisfy her prima facie case with regard to these two positions, the defendant has again offered legitimate, non-discriminatory reasons for its decisions. Defendant set forth evidence that school principals are given deference in choosing their assistant principals, with Board approval. Trotter affidavit, ¶ 11. Additionally, Willingham, who became assistant principal at Dora High School, has been an assistant principal previously, and plaintiff Stovall had not. These are reasons that "might motivate a reasonable employer. *See Chapman*, 229 F.3d at 1030. Subjective evaluations are properly articulated as part of the employer's burden to produce a legitimate, gender-neutral basis for its decision. See *Vessels,* 408 F.3d at 769, citing *Fowle v. C & C Cola*, 868 F.2d 59, 65 (3rd Cir.1989) (other citations omitted).

This court may not second guess the wisdom of an employer's decisions as long as they are not motivated by discrimination. *Combs*, 106 F.3d at 1541-43. Conclusory allegations such as these without specific supporting facts are insufficient to satisfy plaintiff's burden to establish pretext. *See Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 597 (11th Cir.1987) (stating that plaintiff's conclusory allegations were not sufficient to raise inference of pretext or discrimination where employer offers extensive evidence of legitimate, nondiscriminatory reasons). Plaintiffs cannot show pretext merely by questioning the wisdom of the defendant's reasons when the reasons

19

given might motivate a reasonable employer. *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir.2000).   In other words, quarreling with a reason that might motivate a reasonable employer is not sufficient. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (2004), citing *Chapman*, 229 F.3d at 1030.      Plaintiff Stovall offers as evidence of pretext that "there in nothing in the evidence that shows that the Walker County Board of Education ... has adopted or asserts the positions ... stated by Trotter or Sanford, as its reasons for not hiring Stovall into the positions in question." Plaintiffs' memorandum, at 31.  The court finds as a matter of law this is not evidence of pretext and wholly insufficient to satisfy plaintiff Stovall's burden.   Rather, as stated above, plaintiff Stovall must come forward with evidence which reveals such weaknesses or implausibilities in the employers' proffered reasons that a reasonable factfinder could find them unworthy of credence.   *Cooper,*   390 F.3d at 725. Plaintiffs' argument on pretext is not equivalent to evidence that offered reason was a pretext for discrimination.   These claims are due to be dismissed.

*Cordova High School Principal Position:*

This claim by plaintiff Stovall was not timely filed.  It was not part of her 1998 EEOC charge nor part of her amended charge.  The EEOC found this claim to have been untimely filed.  It issued her a dismissal notice on June 11, 2002 on this basis. Exhibit 5 to Stovall depo.  "[D]iscrete discriminatory acts are not actionable if time

barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 2072 (2002).  This lawsuit was filed more than a year later, on October 22, 2003.  The court being of the opinion this claim is not properly before the court, this claim shall be dismissed.

### The Retaliation Claims

The plaintiffs also claim that they were not promoted to various positions because they both engaged in protected activity, namely filing EEOC charges and grievances.  Again, to establish a prima facie case of retaliation for engaging in protected activity, the court must use the *McDonnell-Douglas* burden shifting standard, discussed in detail, *supra*.  The plaintiffs must show that they (1) engaged in Title VII protected activity; (2) adverse employment actions occurred; and (3) causal connections between the protected activity and the adverse employment actions exist.  *Brochu v. City of Riviera Beach,* 304 F.3d 1144, 1155 (11th Cir.2002); *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999).

Both plaintiffs filed EEOC charges and grievances, which are protected activities.  Both plaintiffs were not promoted to the positions in question, which are adverse employment actions.  However, neither plaintiff has demonstrated a causal

21

connection between their failures to be promoted and their protected activity.  Plaintiff Little's protected activity, filing a grievance, got her the promotion she desired.  Since that time she has not been demoted, and in fact again promoted to a principal's position.  While Little claims defendant's actions such as giving her an office with the bookkeeper after promoting her to assistant principal were retaliatory, the court disagrees.  "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir.2000) (citation omitted). Not all conduct taken by an employer which causes a negative affect on an employee constitutes adverse employment action.[10]  *Davis v. Town of Lake Park, Florida,* 245 F.3d 1232 (11th Cir.2001).  To be considered an adverse employment action under Title VII's antiretaliation provision, the action 'must either be an ultimate employment decision or else must 'meet some threshold level of substantiality.'" *Stavropoulos v. Firestone,* 361 F.3d 610, 616-17 (11th Cir.2004).

---

[10]"This limitation is consistent with the basic principle that Title VII is ... neither a general civility code nor a statute making actionable the 'ordinary tribulations of the workplace.'" *Davis v. Town of Lake Park, Florida,* 245 F.3d 1232, 1239 (11th Cir.2001) (quoting *Gupta,* 212 F.3d at 587); *see also Wu v. Thomas,* 996 F.2d 271, 273-274 (11th Cir.1993) (noting that an adverse employment action does not result from every unkind act, even those with economic consequences).

Plaintiff Stovall claims that the same positions she did not receive due to gender discrimination, she has not received because of retaliation.  However, since filing her grievances and EEOC charges, plaintiff Stovall became assistant principal and counselor at Carbon Hill in 2000 and then, in 2003, she became Principal of Bankhead Middle School.  The defendant has met its burden to provide the court with legitimate, non-discriminatory reasons for not selecting the plaintiffs for the positions in question.  *See e.g. EEOC v. Reichhold Chemicals*, 988 F.2d 1564, 1570 (11th Cir.1993); *Brown v. American Honda Motor Co., Inc.*, 939 F.2d at 950.  The plaintiffs have offered only mere speculation that their EEOC complaints had any effect on the defendant's failure to promote either of them to certain positions or were behind a host of perceived retaliatory actions which were no more than trivial.  As such, plaintiffs have not met their burden to proceed past a motion for summary judgment on their retaliation claim.

## Age Discrimination

The plaintiffs must establish that they belonged to the protected class, they were subject to adverse employment action, similarly situated employees outside the class were treated more favorably, and they were qualified for the job.  *See e.g., Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1329-30 (11th Cir.1998).  Assuming plaintiffs meet this burden, the defendant must articulate  legitimate, non-

discriminatory reasons for its employment decisions.  *Steger v. General Electric Co.*, 318 F.3d 1066, 1075 (11th Cir. 2003).   An employer cannot prevail where the "legitimate reason did not sufficiently motivate the employer at the time of the decision."  *Id.*, citing *Speedy v. Rexnord Corp.*, 243 F.3d 397, 403 (11th Cir.2001). Plaintiff Little claims only that the failure to promote her to the Curry Elementary position was based on her age.  As the court has already found her claim based on non-promotion to this position to be moot, the court is of the opinion this claim is due to be dismissed.  The plaintiffs identify no other positions that they did not receive due to alleged age discrimination.

## CONCLUSION

The court having considered the foregoing, and finding that the plaintiffs have failed to establish any genuine issue of material fact sufficient to allow any of their claims to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment is hereby **GRANTED**.  The plaintiffs' claims are **DISMISSED WITH PREJUDICE**.  Each party is to bear its own costs.

**DONE** and **ORDERED** this the 30th day of June, 2005.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

24